[Civ. No. 3774. Third Appellate District.—May 15, 1929.]

FRANK MIRATTI, Jr., et al., Respondents, v. BANCA POPOLARE FUGAZI (a Corporation) et al., Appellants.

(1)

E. W. Squier and R. T. Harding for Appellants.

Scherrer & McCarty and Charles Robert McCarty for Respondents.

PLUMMER, J.—This cause is before us upon an appeal by the defendants Banca Popolare Fugazi, F. N. Belgrano, Sr., and F. N. Belgrano, Jr., from an order of the Superior Court in and for the county of Santa Barbara, denying their motion for a change of place of trial of said action to the city and county of San Francisco. The grounds of their motion are that no cause of action is stated in the complaint against the defendant U. Dardi, the only defendant residing in Santa Barbara County, and that the other defendants are residents of the city and county of San Francisco, etc. The motion appears to be supported by proper notices and affidavits. The argument of appellants is addressed to the point that the complaint states no cause of action against any of the defendants, and, therefore, the fact that U. Dardi is a resident of the county in which the action is brought must be disregarded. The complaint alleges the residence of U. Dardi in the county of Santa Barbara; that Pasqualina Miratti is the mother of the plaintiff Frank Miratti, Jr.; that both of the plaintiffs are residents of the county of Santa Barbara; that the defendant Banca Popolare Fugazi was and is a banking corporation duly organized under the laws of the state of California, and owned and operated the bank and branches thereof throughout the state; that the headquarters of said bank was and is in the city and county of San Francisco, and that said defendant owned and operated a branch bank thereof in the city and county of Santa Barbara. The complaint then sets forth: "That on or about the 10th day of October, 1921, the plaintiff Frank Miratti, Jr., was an employee and assistant cashier of the defendant bank, and was employed in such capacity at the branch bank of said defendant in the City and County of Santa

Barbara, and had been such for a period of approximately four years prior to the date just mentioned; that the defendant U. Dardi was an employee of the defendant-bank, and was employed by the bank in the capacity of manager of the branch bank of the defendant bank owned and operated by it in the City and County of Santa Barbara; that on or about October 10, 1921, the plaintiff Frank Miratti, Jr., was employed by the defendant to act as teller at one of its paying and receiving windows; that one Emil Toscanini was also an employee and teller of the defendant-bank, in charge of another and adjoining paying and receiving window, and was the head teller of said bank and superior in authority to the plaintiff Frank Miratti, Jr., and was in charge of all the cash of said branch bank; that on the 10th day of October, 1921, said Emil Toscanini, pursuant to the practice and custom of said bank, turned over and delivered to the plaintiff Frank Miratti, Jr., at the paying and receiving window occupied by the said Frank Miratti, Jr., the sum of $2240.00, in lawful money of the United States, and that the said Frank Miratti, Jr., thereupon placed said money in the cash drawer in the cage at the window where said Frank Miratti, Jr., was acting as receiving and paying teller, and as provided by the defendant-bank for such purpose; that at the conclusion of the day's business, the plaintiff Frank Miratti, Jr., checked over his cash and discovered that he was short to the extent of $2240.00; that the plaintiff Frank Miratti, Jr., then and there so informed the said Emil Toscanini and delivered to said Emil Toscanini all the cash on hand in his cage, and the said Toscanini checked the same with the plaintiff Frank Miratti, Jr., but the said shortage still remained; that on the opening of said branch bank on the following morning the said Toscanini and the said plaintiff rechecked said cash, and also checked the entire cash of said branch bank, but the shortage still remained; that thereupon the plaintiff Frank Miratti, Jr., and the said Emil Toscanini informed U. Dardi, the manager of said bank, of said shortage; that the said U. Dardi then and there communicated with the head office of said bank in San Francisco, and informed them of such shortage; that thereafter, and on or about the 12th day of October, 1921, the defendants in this action informed the plaintiff Frank Miratti, Jr., that the said

4

Frank Miratti, Jr., was under fidelity bond and had been bonded with such a bond by a Bonding Company; that they did not believe that said plaintiff Frank Miratti, Jr., had appropriated or committed any wrongful act in or about the loss or shortage of said sum of $2240.00, or any part thereof; but that for the protection of said bank it would be necessary for the plaintiff Frank Miratti, Jr., to pay the said bank the sum of $2240.00, and that unless the said plaintiff Frank Miratti, Jr., did pay the same to said bank, it would be necessary for them to, and they would turn the entire matter over to, and refer the same to the said Bonding Company for refund; that the said defendants then and there further stated to said Frank Miratti, Jr., that in the event the said matter was turned over to, or referred to the Bonding Company, that the Bonding Company would bring great disgrace upon the plaintiff Frank Miratti, Jr.; that the character and reputation of the plaintiff Frank Miratti, Jr., for honesty and integrity would be utterly ruined; that the defendant Banca Popolare Fugazi would be compelled to immediately discharge the plaintiff Frank Miratti, Jr., and that the plaintiff Frank Miratti, Jr., would thereafter be unable to hold any position of honor or trust in any place whatever; that he would be so disgraced in his own community that he would be forced to leave Santa Barbara where he was born and had been raised and where his family had resided ever since, and that the said plaintiff Frank Miratti, Jr., would, in addition thereto, have to repay to the Bonding Company the said sum of $2240.00; the said defendants at the same time and place, stated to the said plaintiff Frank Miratti, Jr., that if the plaintiff Frank Miratti, Jr., forthwith paid said sum of $2240.00 to the defendant Banca Popolare Fugazi, that the plaintiff Frank Miratti, Jr., would not suffer said misfortune or disgrace; he would not be discharged, and the matter would not be turned over to the Bonding Company, but would be kept quiet, and the said plaintiff could retain his position with the bank, and that said plaintiff was in line for promotion; that the defendants, at the same time and place, further stated to the plaintiff Frank Miratti, Jr., that if he, the said plaintiff Frank Miratti, Jr., paid to the said bank the said sum of $2240.00, the defendants would employ detectives, without cost to the said plaintiff Frank Miratti, Jr.,

and would make an exhaustive investigation of said matter and endeavor to locate and recover the said sum of $2240.00 and that the defendants were convinced that the same would be recovered; that thereafter, and on or about the 13th day of October, 1921, the defendants, at and within the County of Santa Barbara, repeated the aforesaid statements and representations to the plaintiff Pasqualina Miratti.'' The complaint then goes on to allege that the plaintiff Frank Miratti, Jr., and his mother, the plaintiff Pasqualina Miratti, were greatly agitated, placed in great fear, etc., and by reason of the statement just herein referred to, executed and delivered to the defendant bank a promissory note in the sum of $2,240, and thereafter paid to said bank the said sum of $2,240. The complaint then goes on to allege that the plaintiff Frank Miratti, Jr., was not under any bond whatsoever; that the defendants, at the time they made the statements herein referred to, knew that the plaintiff Frank Miratti, Jr., was not under any bond whatsoever, and that the bank, of which the plaintiff was an employee, had not taken out any bond as alleged by the defendants; that the plaintiffs had no knowledge of the falsity of the defendants' statements. The complaint further alleges that the defendants knew, at the time they were making the statements, that the same were false, and that each and every of the statements herein referred to were untrue, and that the statements were made for the purpose of intimidating the plaintiffs and causing them to pay to the bank the said sum of $2,240; that the statements made by the defendants relative to employing detectives to ascertain what had become of the money, and secure its repayment to the bank, were made without any intention whatever on the part of the defendants to perform, and that said defendants had no such intentions at the time said statements were made, but were falsely made for the purpose of inducing the plaintiffs to execute and deliver to the defendants a promissory note for said sum of $2,240, and to thereafter pay the same. The complaint then further alleges that the falsity of the statements made by the defendants was not discovered until after the said $2,240 had been paid to said bank, to wit, in or about the month of April, 1926. The complaint asks for the recovery of said sum of $2,240, with seven per cent interest, and also for exemplary damages.

The appellants in their presentation of this cause have presented authorities having to do with circumstances involving the embezzlement of funds where the embezzlement has been established as a matter of fact or admitted, and promissory notes given to cover the amount of funds embezzled, and our attention is called to a number of cases where statements that the parties whose funds have been embezzled would take legal proceedings for the recovery of the loss so incurred and where statements of that kind have been held insufficient to support an action for recovery. There seems to be no reason why we should review the authorities dealing with conditions such as we have just stated, for the simple reason that those conditions are not presented to us upon the pleadings upon which the trial court based its order denying the defendants' motion for a change of place of trial. Whether the plaintiff Frank Miratti, Jr., was or was not liable to the bank in the sum of $2,240 or any other sum is really immaterial, unless such liability is an admitted fact or must necessarily be concluded from the complaint itself. We are not dealing with the facts, but only with the pleadings in determining this question. We think it clear that there is nothing in the complaint which would justify the court in finding as a fact that the plaintiff Frank Miratti, Jr., was, at the time of the giving of the promissory note by himself and his mother to the bank, or at the time of paying the sum of $2,240 to the bank, liable to the bank in any sum whatever. So far as the complaint is concerned it appears therefrom that the defendants entertained no such idea, but that it would simply be better for the reputation of Frank Miratti, Jr., if said sum of money were paid by him and his mother to the bank. This presents a situation which we think supports the ruling of the trial court in denying the motion for a change of place of trial, and that is, the complaint upon its face shows an entire want of consideration for the payment of any money by the plaintiff Pasqualina Miratti to the defendants. It also shows that the plaintiff Pasqualina Miratti was induced and caused to sign the note and pay the money by reason of the alleged fraudulent and untruthful statements of the defendants. While the complaint itself does not in so many words charge fraudulent acts, it does charge statements as untrue and made for the purpose of

deceiving the plaintiffs which, especially as to the plaintiff Pasqualina Miratti, are denounced as fraudulent by section 1572 of the Civil Code. To constitute a fraud within that section to induce one to enter into a contract to pay money, subdivision 1 of the section provides: "The suggestion of a fact of that which is not true by one who does not believe it to be true, is sufficient to constitute fraud." Likewise, subdivision 4: "A promise made without any intention of performing it is sufficient to constitute a fraud." And subdivision 5: "Any other act fitted to deceive." We may also call attention to section 1570 of the same code in so far as it applies to the plaintiff Pasqualina Miratti, which shows that the allegations of the complaint are sufficient as to menace, to wit, subdivision 3 of the section relating to injury to the character of such person. While there is no allegation in the complaint as to injury to the character of the plaintiff Pasqualina Miratti, there are allegations in the complaint as to the statements of the defendants relative to the threatened injury to the character and reputation of the plaintiff Frank Miratti, Jr., the son of the plaintiff Pasqualina Miratti. We state this as showing that the plaintiff Pasqualina Miratti was induced to sign the note and make payment to the bank, as alleged, without any valid consideration, and that a cause of action exists on her part for the recovery of the money from the defendants, and also for damages, if any, on account of the fraudulent acts of the defendant, U. Dardi, the manager of the bank.

That the complaint may not be good as against special demurrer is entirely immaterial. Likewise, this is true if it be admitted that the facts attempted to be alleged are defectively stated. It may also be true that the plaintiffs' cause of action is barred by the statute of limitations. These are questions which can only be considered upon their presentation to the court by way of demurrers on the part of the defendants. Thus, as said in the case of *McClung* v. *Watt*, 190 Cal. 155 [211 Pac. 17] : "Allegations which do no more than shadow forth the semblance of a cause of action are proof against assault upon the ground that they are sham and frivolous." And further: "It is enough, upon the hearing and determination of a motion for a change of place of trial by an individual defendant in an action brought against him by a corporation in the county of the

latter's residence, that the cause of action purported to be stated against the corporation was apparently pleaded in good faith and is not, *prima facie*, so glaringly and vitally defective as to be beyond correction by amendment.'' (We have quoted from the syllabus.) Thus, it may be admitted in the present case that the complaint is defective; that the trial court would be justified in sustaining a demurrer directed to certain defects therein; but if it appears that the pleading is such that the defects can be cured by amendment, then and in that case the motion for a change of place of trial was properly denied.

We think, with the respondents, that the case which we have just cited is conclusive, and that the motion for a change of venue was properly denied, and the order is affirmed.

Thompson, J., and Finch P. J., concurred.